**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Brian Heath, Brandon Mauck, Lorelle Goldsberry, Brigette Brimhall, Barbara Murphy, and Cindy Schmaltz,<br><br>*Plaintiffs*,<br><br>*vs*<br><br>The Mayo Clinic, a Minnesota non-profit corporation; Mayo Clinic Health System – Northwest Wisconsin Region, Inc., a non-stock corporation in Wisconsin; Mayo Clinic Arizona, an Arizona non-profit corporation,<br><br>*Defendant*s. | Court File No. 22-cv-3023<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Brian Heath ("Plaintiff Heath"), Plaintiff Brandon Mauck ("Plaintiff Mauck"), Lorelle Goldsberry ("Plaintiff Goldsberry"), Brigette Brimhall ("Plaintiff Brimhall"), Barbara Murphy ("Plaintiff Murphy"), and Cindy Schmaltz ("Plaintiff Schmaltz"), make the following allegations for their complaint against the Defendant Mayo Clinic ("Defendant Mayo"), Mayo Clinic Health System – Northwest Wisconsin Region, Inc. ("Defendant Mayo Northwest"), and  Mayo Clinic Arizona ("Defendant Mayo Arizona") (all Defendants are collectively referred to as "Defendants").

**INTRODUCTION**

1.     In October, 2021, Defendant Mayo mandated that all of its employees, including those of its related entities such as Defendant Mayo Northwest, and Defendant

Mayo Arizona, receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of Defendants' employees, including Plaintiffs, objected to receiving these vaccinations because of their sincerely-held religious beliefs.  Plaintiffs filed requests for religious exemptions with Defendants to be exempt from taking the Covid-19 vaccination.  Defendants denied the requested exemption, or in the case of several Plaintiffs, granted the exemption but conditioned it upon Plaintiffs undergoing testing and signing a release of medical information to allow third parties access to their medical information.  In addition, Defendants failed to undertake an individual interactive process as required for evaluating religious exemption requests.  Finally, only a couple of weeks after terminating Plaintiffs, Defendants reversed the testing program part of its Vaccine Mandate, demonstrating that the terminations were unnecessary or a pretext.

2.      Based on Defendants' implementation of the Vaccine Mandates and their refusal to grant Plaintiffs their requests for a religious exemptions, Plaintiffs bring these claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA"), related state claims under the Arizona and Minnesota Human Rights Acts for religious discrimination and disability discrimination, and breach of contract, based on Defendant Mayo mandating a vaccine.

## JURISDICTION AND VENUE

3.      Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including filing of Charges with the EEOC, and the receipt of a right-to-sue letters from Equal Employment Opportunity Commission

2

("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.     This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.     This Court has personal jurisdiction over Defendant Mayo as an entity as it is a non-profit corporation operating in and located in the State of Minnesota.

6.     This Court has personal jurisdiction over Defendant Mayo Northwest as an entity as it is a non-stock corporation in Wisconsin.

7.     This Court has personal jurisdiction over Defendant Mayo Arizona as an entity as it is a non-profit corporation operating in and located in the State of Arizona.

8.     Defendant Mayo is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

9.     Defendant Mayo Northwest is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

10.     Defendant Mayo Arizona is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty

or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

11.    Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and Defendant Mayo conducts business in the State of Minnesota.

## PARTIES

12.    Plaintiff Heath is a Wisconsin resident and a former employee of Defendant Mayo Clinic Health System – Northwest Wisconsin Region, Inc.  who worked as a registered nurse.  Plaintiff Heath worked for Defendant Mayo for 21 years.

13.    Plaintiff Mauck is an Arizona resident who worked for Defendant Mayo Arizona Foundation as an information technology analyst.  Plaintiff Mauck worked for Defendant Mayo Foundation for nearly 11 years.

14.    Plaintiff Goldsberry is an Arizona resident and former employee of Defendant Mayo Arizona who worked as a registered nurse doing telework.  Plaintiff Goldsberry worked for Defendant Mayo for 12 years.

15.    Plaintiff Brimhall is an Arizona resident who worked for Defendant Mayo Arizona as a registered nurse for over 17 years.

16.    Plaintiff Murphy is an Arizona resident and former employee of Defendant Mayo Arizona who worked as a certified pharmacy technician for over 17 years.

17.    Plaintiff Schmaltz is an Arizona resident and former employee of Defendant Mayo Arizona who worked as a health care coordinator for over 24 years.

4

18.     Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

19.     Defendant Mayo Northwest is a Wisconsin non-stock corporation.

20.     Defendant Mayo Arizona is an Arizona non-profit corporation which operates medical facilities in Arizona.

## FACTS

21.     During the pandemic in 2020 and 2021, Plaintiffs were asked to work their own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic.  At that time, Plaintiffs, while unvaccinated, continued to provide patient care while employed by Defendants.

22.     When Covid-19 vaccines first became available in December 2020 Defendants encouraged, but did not require their employees to get vaccinated, and Plaintiffs continued to work throughout 2020 and 2021 while unvaccinated.

23.     Defendants recognized in November 2020, in the words of Dr. Gregory Poland, head of Mayo's Vaccine Research Group, that "*we can't mandate that people take a vaccine, it's their right not to take one.*"

24.     Again in December 2020 Defendants recognized that "*vaccination is voluntary.*"

25.     Defendants also recognized that some of their employees would have religious objections to taking the vaccine, and accordingly, Defendants had a policy until September 2021 of granting all or nearly all requests for religious exemptions.

26.    In litigation in October 2021, Defendant Mayo boasted that it granted 90% of requests for religious exemptions, and because it was so lenient in granting requests for religious exemptions, the Defendant argued that the Plaintiffs in that case had no standing because it was unlikely they would be terminated or would suffer any negative consequences as a result of Defendant Mayo's Vaccine Mandate.

27.    Defendants recognized the important work that all of their employees were doing—the unvaccinated and the vaccinated—and on September 28, 2021 the President and CEO of Mayo Clinic (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Mayo's employees:

> *On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues.  We truly appreciate you and your efforts to live our values every day.*

28.    However, just two weeks later, Defendants implemented their Vaccine Mandate.  The Vaccine Mandate stated that "*all Mayo Clinic staff members*" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "*noncompliant,*" later "*placed on unpaid leave,*" and eventually "*terminated.*"  The Vaccine Mandate applied to "*all staff, including remote workers,*" of which Defendants had many.  Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

29.    Defendants announced the Vaccine Mandate on October 13, 2021. Defendants' changed policy required all staff to become vaccinated against Covid-19, and that if they were not already vaccinated or only partially vaccinated, they would have

to become vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

30.    On October 25, 2021 Defendants sent a communication to their employees outlining the steps to comply with the Covid-19 vaccination policy.  Beginning on December 3, 2021, Defendants issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

31.    Defendants announced that there were both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "medical and religious exemptions" to the Vaccine Mandate, and even provided "forms" for such applications.

32.    However, what Defendants gave with one hand, they took away with the other by proclaiming that "*it is anticipated that a <u>small number of staff</u> will have qualifying religious exemption.*"  (emphasis added).  Further, Defendants declared: "*[o]nly a <u>small number of staff</u> are expected to qualify for a religious exemption.*" (emphasis added).

33.    Defendants printed and distributed this message that it would only grant a "*small number*" of the religious exemptions, as it simultaneously argued the opposite in Federal Court in Minnesota.  Defendant Mayo argued in Federal Court that Plaintiffs alleging to be harmed as a result of the newly implemented Vaccine Mandate had no justiciable controversy, no standing, and the Court had no subject matter jurisdiction because Defendant Mayo granted nearly all requests for religious exemptions, and therefore few or no employees would actually be terminated.  Defendant Mayo argued

7

that "*the only competent record evidence show that current Mayo employees'*

*declinations [requests for exemption to vaccine] will not be 'denied*,'" and that "*Mayo*

*has granted 90% (27 of 30) of new employees' requests for religious exemptions.*" *Def.*

*Mayo Memo in Opp. To Mot. For TRO, filed October 8, 2021*.[1]

34.     In Federal Court, Defendant Mayo succeeded in convincing the Court there

was no subject matter jurisdiction, because unvaccinated employees had not been

terminated as of that time (October 2021), and likely would not be terminated because of

Defendant Mayo's generous granting of religious exemptions.  As a result of Defendant

Mayo's representations to the Court, Defendant Mayo obtained dismissal without

prejudice of the Complaint in that case.

35.     Shortly after achieving victory in Court on the basis that it had generously

granted 90% of the requests for religious exemptions, Defendants then switched to their

new position that they would grant only a "*small number*" of the requests for religious

exemptions, and terminate those employees who refused to receive the vaccine.

Defendants then denied Plaintiffs' requests for a religious exemption—in most cases

without even talking to the Plaintiffs about their religious beliefs—and then terminated

---

[1] *Mary Roe 1, et al., v. Allina Health Systems, et al.*, (including Mayo Clinic), Case 0:21-cv-02127, filed October 8, 2021.  Defendant Mayo also wrote that it "*has not terminated or threatened to terminate any employee for failing to obtain Covid-19 vaccination or seeking an exemption*," pp. 5-6; "*all but one [of the plaintiffs] have requested exemptions that, if granted, will allow them to remain unvaccinated and employed*," pp. 7-8;  "*they [unvaccinated Mayo employee plaintiffs] have not suffered any harm and may never suffer any harm*," p. 8, 10; "*Plaintiffs cannot secure standing with vague allegations that exemptions under some (unidentified) vaccination policies are 'narrow' and 'limited*,'" p. 11; and "*rank speculation that an exemption could be denied does not confer standing.*" P. 11. (emphasis in original).

Plaintiffs, representing a complete change in Defendants' company policies and a switch from their representations to the Court in the Federal Court litigation in Minnesota.

36.    Defendant further wrote: "*applications for a religious exemption will be denied if the panel determines the applicant does not demonstrate a sincerely held religious belief*, (emphasis added).  Defendants thus put themselves in the position of deciding the sincerity of the religious belief of their employees, including Plaintiffs and, whether those beliefs were "religious" or not, and "sincere" or not.  Defendants exercised this determination of the sincerity of Plaintiffs' religious beliefs without ever interviewing the Plaintiffs or discussing with Plaintiffs their religious beliefs.

37.    Defendants also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for COVID-19 are severe or immediate reaction to a prior dose of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles*."  Other medical conditions were preemptively discounted, or disregarded, and its physicians were ordered to ignore their clinical judgment (in violation of their oath and ethical duties as physicians) and limit their medical exemptions to these issues only.

38.    The pre-determined limitations on their religious and medical exemption policies were supposed to be kept in the dark, as Defendants wrote to the high-ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so please do not share broadly*." (emphasis added).

39.     Consistent with Defendant Mayo Northwest's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Heath requested a religious exemption from Defendant Mayo Northwest that Defendant Mayo Northwest denied.  Plaintiff Heath also submitted a request for reconsideration, which Defendant Mayo Northwest also denied.  Defendant Mayo Northwest did not provide Plaintiff Heath with the criteria it used in evaluating his request for a religious exemption, nor did Defendant Mayo Northwest provide specific information regarding the reasons for the denial of Plaintiff Heath's request for a religious exemption.

40.     Plaintiff Heath is a Christian who believes his body is a Temple of the Holy Spirit, and that he must care responsibly for his body and honor God with it.  He believes he must not allow any unwanted intrusions into his body.  He also believes that he is to use his body for God's purposes, and should not engage in medical treatments that he believes could be detrimental to his body, which belongs to God.  He also believes that he must be careful with medical treatments that are ethically questionable, and which may treat the body by modifying the body's immune system, which the Covid-19 vaccines do. He believes that receiving the Covid-19 vaccination would violate the Bible's command to honor God with his body, as expressed to him through Biblical principles, prayer and the direction of the Holy Spirit.  He believes that God specifically answered his prayer instructing him not to take the vaccine.

41.     Plaintiff Heath received positive job performance reviews from Defendant Mayo Northwest including that he is "meticulous, hard worker, patient, gentle, thorough,

10

cool, calm, and level headed, easy going, …" and is "very knowledgeable and confident in the pre/post area."

42.    Plaintiff Heath sought an accommodation to continue working as he had for the prior year and a half with no undue hardship to Defendant.  Plaintiff Heath proposed to continue working, but masking, self-screening, and wash hands, if he developed any Covid-19 type symptoms he would stay home.  Defendant Mayo Northwest did not respond to his request for accommodation.

43.    Plaintiff Heath is familiar with persons who have taken the Covid-19 vaccines and become ill shortly after taking the vaccines.

44.    Plaintiff Heath was terminated when he was 48 years of age, and was at the higher end of the pay scale for his position.  The person who was hired for Plaintiff Heath's position was in her 20's, as were other new hires who replaced other open positions in Plaintiff Heath's department, day surgery and PACU (post anesthesia care unit).

45.    Consistent with Defendant Mayo Arizona's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Mauck requested a religious exemption from Defendant Mayo Arizona which Defendant Mayo Arizona denied.  Plaintiff Mauck also submitted a request for reconsideration of the denial of his request for a religious exemption, but Defendant Mayo Arizona denied that request for reconsideration also.  Defendant Mayo Arizona did not provide Plaintiff Mauck with the criteria it used in evaluating his request for a religious exemption, nor did

11

Defendant Mayo Arizona provide specific information regarding the reasons for the denial of Plaintiff Mauck's request for reconsideration.

46.   Plaintiff Mauck is a Christian who believes in the sanctity of human life. He believes that his body is God's Temple and that God's Temple is sacred.  Plaintiff Mauck believes that he must control what is placed in his body, God's Temple.  He also objects to receiving the vaccine because they are produced with or tested with cells from aborted babies.  To receive the vaccine would violate his sincerely held religious belief that life is sacred.  For Plaintiff Mauck to receive the vaccine would violate his sacred identity and relationship with God.

47.   Plaintiff Mauck has had positive job performance reviews, including that he "is an excellent role model for the CIS group – he is dependable, reliable, and is excellent in handling complex situations or problems."  Plaintiff Mauck was in the Mayo "news," and was a happy employee planning to retire some day from Mayo.

48.   Plaintiff Mauck sought an accommodation that he continue to work remotely as he had since March 2020, the beginning of the Pandemic.  Plaintiff Mauck was not in contact with patients or other employees and therefore did not pose any risk to his employer's other employees or patients.  He worked remotely continuously from March 2020 until he was terminated.

49.   Plaintiff Mauck is familiar with people who have taken the Covid-19 vaccines and become ill shortly after taking them.

50. Plaintiff Mauck contracted Covid-19 in November 2021 and recovered, which provided him with natural immunity. His anti-bodies were tested in February 2022, which showed a high level of anti-body protection against Covid-19.

51. Plaintiff Mauck was at the higher end of the pay scale for his position when he was terminated. He was also receiving additional PTO since he had worked for more than 10 years.

52. Consistent with Defendant Mayo Arizona's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Goldsberry requested a religious exemption from Defendant Mayo Arizona that Defendant Mayo Arizona denied. Plaintiff Goldsberry also submitted a request for reconsideration that Defendant Mayo Arizona denied. Defendant Mayo Arizona did not provide Plaintiff Goldsberry with the criteria it used in evaluating her request for a religious exemption, nor did Defendant Mayo Arizona provide specific information regarding the reasons for the denial of Plaintiff Goldsberry's request for reconsideration.

53. Plaintiff Goldsberry is a Christian, she believes in God the Father, Son, and Holy Spirit. She has studied Scripture and lives her life according to Biblical principles, including honesty and righteousness. She believes her conscience has led her to refuse the Covid-19 vaccine, and she did not agree with the use of coercion in mandating of the vaccines.

54. Plaintiff Goldsberry teleworked a majority of the time and had no direct patient care. Her department rotated so that less than one day per week she would work in the Mayo campus, but even then she did not have direct patient care responsibilities,

13

and she wore a mask.  If granted the accommodation, she would have continued working as she had for the prior one and one-half years, which was to work remotely as described above, as did other employees in her department whose jobs did not require patient facing interactions.

55.     Plaintiff Goldsberry had received numerous positive job performance reviews, and a "big 'thank you'" in December 2021 for "your amazing work on the Pre-Admit checklist.  Well Done."  The "thank you," was contained in a Mayo publication that also specifically referenced that many Mayo employees were working remotely.

56.     Consistent with Defendant Mayo Arizona's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Brimhall requested a religious exemption from Defendant Mayo which Defendant Mayo denied. Defendant Mayo Arizona did not provide Plaintiff Brimhall with the criteria it used in evaluating her request for a religious exemption, nor did Defendant Mayo Arizona provide specific information regarding the reasons for the denial of Plaintiff Brimhall's request for a religious exemption.

57.     Plaintiff Brimhall received positive job performance reviews, and was celebrated in an article called "Pandemic Response: Practice on the Frontline," which appeared in an Arizona Department of Nursing publication.  Her reviews included that "Brigette is an amazing nurse that continues to be a strong pillar on 7East."

58.     Plaintiff Brimhall is a Christian who believes that she has God-given anti bodies.  She has a strong Biblical and Christian worldview.  Based on *1 Cor. 3:16-17*, she believes that her body is a Temple of the Holy Spirit and cannot allow her body to be

14

violated or defiled by something the Holy Spirit has guided her to avoid.  Plaintiff

Brimhall believes in the sanctity of life from conception until natural death.  Since the

available Covid-19 vaccines were produced with, or tested with cells from aborted

babies, she cannot allow those vaccines into her body.  Plaintiff Brimhall believes that to

receive the Covid-19 vaccine would cause her to violate the Commandment Thou Shall

Not Kill.  It is her sincerely held belief that, after prayer and petition, that she cannot

receive the Covid-19 vaccine.

59.    Plaintiff Brimhall had her anti-bodies tested December 2020, March 2021,

and in August 2021, which all revealed that she had anti-body protection from Covid-19

or a recent Covid-19 infection.  A recent infection and recovery would have been

evidence of natural immunity from Covid-19.

60.    Plaintiff Brimhall experienced discrimination in the workplace.

Unvaccinated employees were not allowed at daily staffing meetings, but rather had to

appear by Zoom, so that all employees knew who was unvaccinated.  The vaccinated

employees made snide and disrespectful comments about unvaccinated employees, and

patients.  Parties were thrown for retiring employees and unvaccinated employees were

disinvited.

61.    Consistent with Defendant Mayo Arizona's instructions that employees

could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Murphy

requested a religious exemption from Defendant Mayo Arizona which Defendant Mayo

Arizona granted but conditioned on Plaintiff Murphy undergoing regular Covid-19

testing, even though vaccinated employees, who were subject to contracting and

15

transmitting Covid-19, did not have to test.  Plaintiff Murphy sought a religious exemption to the testing but Defendant Mayo Arizona denied the request.  Plaintiff Murphy requested reconsideration from Defendant Mayo Arizona of its denial of the request for a religious exemption, but was denied.  Defendant Mayo Arizona did not provide Plaintiff Murphy with the criteria it used in evaluating her request for a religious exemption, nor did Defendant Mayo Arizona provide specific information regarding the reasons for the denial of Plaintiff Murphy's requests for a religious exemption.

62.    Plaintiff Murphy contracted Covid-19 in October 2021 and has recovered, providing her with natural immunity from Covid-19.

63.    Plaintiff Murphy remotely as a certified pharmacy technician for Defendant Mayo Arizona, and therefore did not pose a danger to any patients or other of Defendant's employees.

64.    Plaintiff Murphy proposed to continue working as she had during the previous part of the Covid-19 Pandemic.  Defendant Mayo Arizona did not respond to Plaintiff Murphy's request to continue working as she had, and Plaintiff Murphy presented no threat to Defendant's patients or employees.

65.    Plaintiff Murphy knows of people who received the Covid-19 vaccine and became sick shortly afterwards.

66.    Plaintiff Murphy was 63 years old when she was terminated.  She was at the high end of the pay scale for her position, and was approaching retirement age.

67.    Consistent with Defendant Mayo Arizona's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Schmaltz

16

requested a religious exemption from Defendant Mayo Arizona which Defendant Mayo Arizona denied. Plaintiff Schmaltz requested reconsideration of the denial of her request for a religious exemption to taking the Covid-19 vaccination, but that request for reconsideration was denied.

68. Defendant Mayo Arizona did not provide Plaintiff Schmaltz with the criteria it used in evaluating her request for a religious exemption, nor did Defendant Mayo Arizona provide specific information regarding the reasons for the denial of Plaintiff Schmaltz' request for a religious exemption.

69. Plaintiff Schmaltz received numerous positive job performance review including that she "assumes responsibility for self development, functions as a resource," and she "communicates effectively, participates in continuous improvement activities." She has "good judgment and problem solving skills, strong interpersonal skills."

70. Plaintiff Schmaltz is a Christian and strives to follow the Bible in its entirety. She believes her body is a Temple of the Holy Spirit and that she must take care of it as a Temple. She does not smoke, drink, or consume other drugs. She eats healthy and does not ingest anything that could harm her Temple. She received a vaccine in 2017 that has harmed her autoimmune system, and since then has refused vaccinations. She prayed about whether to receive the Covid-19 vaccine and received a clear message from God not to take the Covid-19 vaccine.

71. Plaintiff Schmaltz has observed numerous people who have gotten sick shortly after taking the Covid-19 vaccine. She saw many patients who came in 2-21 days

17

post vaccine with various concerns, including severe headache, chest pain, muscle pain, and shortness of breath."

72.    Plaintiff Schmaltz was 67 years old at the time of her termination, and was near the top end of the pay scale for her position.  Plaintiff Schmaltz was terminated for refusing to take the vaccine after Defendant Mayo Arizona repealed its policy of forcing unvaccinated employees to submit to regular, weekly testing if they refused to test for Covid-19 or to be vaccinated.

73.    Plaintiff Schmaltz contracted Covid-19 in December 2021, received the monoclonal antibodies infusion and recovered which has provided her with natural immunity.

74.    After Defendants denied Plaintiffs' requests for religious exemptions, Defendants also warned the Plaintiffs: "*Do not distribute, forward, or copy the content of this notification.*"

75.    Defendant Mayo Northwest Wisconsin terminated Plaintiff Heath's employment on January 3, 2022 based on his refusal to take the Covid-19 vaccine. Plaintiff Heath filed a charge of religious and age discrimination with the EEOC and with the State of Wisconsin Equal Rights Division.  Plaintiff Heath received a Right to Sue letter from EEOC on September 2, 2022.

76.    Defendant Mayo Arizona terminated Plaintiff Mauck on March 11, 2022. Plaintiff Mauck filed a charge of religious discrimination against Defendant Mayo Arizona with the EEOC and with the Arizona Attorney General's Civil Rights Section.

Plaintiff Mauck received a Right to Sue letter from the Arizona Attorney General's office dated September 2, 2022.

77.     Defendant Mayo Arizona terminated Plaintiff Goldsberry's employment on January 3, 2022 based on her refusal to take the Covid-19 vaccine.  Plaintiff Goldsberry filed a charge of religious discrimination with the EEOC and received a Right to Sue letter from the EEOC dated September 26, 2022.

78.     Defendant Mayo Arizona terminated Plaintiff Brimhall's employment on October 22, 2021 based on her refusal to take the Covid-19 vaccine.  Plaintiff Brimhall filed a charge of religious discrimination with the EEOC and received a Right to Sue letter from EEOC.

79.     Defendant Mayo Arizona terminated Plaintiff Murphy's employment on February 23, 2022 based on her refusal to take the Covid-19 vaccine or engage in the testing.  Plaintiff Murphy filed a charge of religious, age, and disability discrimination with the Arizona Attorney General and EEOC and received a Right to Sue letter from the Arizona Attorney General dated September 27, 2022.

80.     Defendant Mayo Arizona terminated Plaintiff Schmaltz' employment on April 23, 2022 based on her refusal to take the Covid-19 vaccine or engage in the testing and sign a release of information.  Plaintiff Schmaltz filed a charge with the EEOC and Arizona Attorney General asserting religion, age, and disability discrimination and received a Right to Sue letter from the Arizona Attorney General dated September 27, 2022.

19

81. Defendants created an ad hoc panel to review such exemption requests, but kept the identity of the panelists secretive, so as to prevent examination of the guidelines and criteria Defendants used in evaluating the requests for religious exemptions. Defendants wrote: "*individual names [of the ad hoc panelists] are confidential and will not be shared.*"

82. Plaintiffs have sincerely held religious beliefs, and submitted requests for exemptions, but Defendants accepted very few religious exemptions, with the exception that some were granted, but conditioned upon submission to invasive, supervised weekly testing despite the fact that the vaccinated and unvaccinated contracted and transmitted both the Delta and Omicron variants at similar rates.

83. Defendants' forms for requesting religious exemptions was written in a deceptive way to force applicants into accepting false statements as true, and then trying to force applicants for religious exemptions into admitting "inconsistencies" that Defendants could use to deny the request for religious exemptions.

84. As a result of Defendant Mayo's policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those employees, including Plaintiffs, who refused the Covid-19 vaccination or to undergo testing, and whom Defendants terminated as a result.

85. The Plaintiffs proposed reasonable accommodations to Defendants, such as wearing a mask, self-monitoring for symptoms, and voluntarily reporting symptoms and quarantining as necessary.

86.    Plaintiffs had worked for approximately one and one-half years during the Pandemic prior to the Vaccine Mandate, and Plaintiffs had fully performed their employment duties and even obtained positive and glowing job performance reviews, without being discriminated against.

87.    None of the Plaintiffs have been determined to have transmitted Covid-19 to other employees or patients.

88.    Defendant Mayo's denials of requests for religious exemptions all contained the same boilerplate language:

> *Thank you for submitting your request for religious exemption.  The information you provided was carefully considered.  While this may not be the news you were hoping to receive, your religious accommodation has not been approved.  Based on the information provided, your request did not meet the criteria for a religious exemption accommodation.*

89.    Defendants engaged in no case-by-case analysis or individualized interactive process to discuss Plaintiffs' exemption requests or possible accommodations. In response to requests for explanation or information, Defendants wrote: "*HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision.*"

90.    Rather than engaging in a legitimate interactive process, respecting the sincerity of Plaintiffs' religious beliefs, or attempting reasonable accommodation, Defendants used more boilerplate language to justify their pre-determined result:

> *Generally, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and*

> consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the COVID-19 vaccine.

91. Defendants actually specifically disavowed an individual interactive process by writing: "*Specific feedback on individual requests will not be provided*," and "*it is not possible to provide individual feedback*."

92. Plaintiffs sought further clarification on Defendants' criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendants determining that Plaintiffs did not have a "sincerely held religious beliefs," but the Plaintiffs were simply given the generalized, identical language in the letters.

93. In its form denial letters, Defendants announced that they would accept appeals of its uniform denial decisions. "*If you would like to submit additional clarifying information, you may submit a reconsideration request here*." Plaintiffs took advantage of that process and submitted additional information supporting his request for exemption.

94. Defendants required appeals to be made within 48 hours. These denials were emailed and not hand delivered despite the fact that the employees' jobs were at stake. Many employees did not have access to work email at home, and therefore may not have even gotten the notice of the denial of their request for the religious exemption until they returned to work, after the 48 hours had run. Others were on vacation, or engrossed in work or family responsibilities when the notice of denial of their request for religious exemption came, and thus failed to make an appeal with the 48 hour period.

22

95.     Plaintiffs followed the appeal process but their requests for reconsideration were generally denied, with the exception of those whose exemption was conditioned on their undergoing testing and agreeing to release medical information to third parties. Defendants again issued identical denial letters to nearly every employee who appealed. The transmittal email messages stated: "*Unfortunately, the additional information you provided did not change the outcome as it did not meet the criteria for a religious accommodation.*"  Again, no interactive process was used to evaluate the requests for exemptions.

96.     Defendants did not provide information about their process for determining whether Plaintiffs' religious beliefs were sincerely held or not, or whether Plaintiffs' sincerely held religious beliefs would be accommodated either.

97.     Both the original denial of the religious exemption and the denial of the requests for reconsideration contained this warning at the bottom: "*Do not disseminate, distribute, forward, or copy the content of this notification.*"

98.     Defendants further instructed their staff to "*endorse the vaccine or say nothing.*"

99.      Each of the Plaintiffs submitted good-faith statements of their sincerely-held religious beliefs, with explanations of how their faith constrained them from accepting the Covid-19 vaccination.  Defendants' ad hoc panel nevertheless denied Plaintiffs' requests for an exemption and made no effort to accommodate their request for a religious exemption.

100.    Defendants did grant religious exemptions to some of their employees. However, those employees were required to undergo weekly testing for the Covid-19 virus.

101.    Defendants, in issuing their Vaccine Mandates, instructed that all of their employees must be "fully vaccinated," despite the fact that the phrase "fully vaccinated" has included receiving one shot, or two shots, and then discussion of three shots, and even additional or annual shots.

102.    Defendants issued the Vaccine Mandate mandating its employees, including Plaintiffs, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.

103.    On August 6, 2021, CDC Director Dr. Rochelle Walensky stated that vaccines against Covid-19 did not prevent transmission of SARS-CoV-2 variants (Virus).[2]  This followed the CDC's updated guidance and Dr. Walensky's comments on July 27, 2021, recommending that everyone wear a mask in indoor public settings in areas of substantial and high transmission, regardless of vaccination status. This decision was made with the data and science available to CDC at the time.  Some of "those data were published in CDC's *Morbidity and Mortality Weekly Report (MMWR)*, demonstrating that **Delta infection resulted in similarly high SARS-CoV-2 viral loads**

---

[2] https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html. (last accessed November 8, 2022).

**in vaccinated and unvaccinated people. High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, vaccinated people infected with Delta can transmit the virus**."[3]

104.    Dr. Deborah Birx, the former White House Covid Response Coordinator, stated in July 2022: "*I knew these vaccines were not going to protect against infection. And I think we overplayed the vaccines …*".  Separately Dr. Birx also stated: "*When we make broad statements, when we say to people that these vaccines are going to protect against infection – one, it wasn't studied, …*".  Dr. Birx made her statements in July 2022, approximately one year after President Biden stated: "*If you get vaccinated, you won't get Covid*."  President Biden (who has been vaccinated and boosted, yet has contracted Covid-19 at least twice), made his statement after Director of the National Institute of Allergy and Infectious Diseases, Dr. Anthony Fauci (who has been vaccinated and boosted, yet has contracted Covid-19), made the statement that "*when people are vaccinated, they can feel safe they will not be infected.*"  Dr. Anthony Fauci made his statement after Center for Disease Control Director Dr. Rochelle Walensky (who has been vaccinated and boosted, yet tested positive for Covid-19 as recently as October 2022), stated: "*vaccinated people do not get sick … do not spread the virus.*"

---

[3] *Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR*, Centers for Disease Control and Prevention (July 30, 2021), https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html (emphasis added). See also, https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html. (last accessed November 8, 2022); https://www.cdc.gov/media/releases/2022/p0811-covid-guidance.html. (last accessed November 8, 2022).

105.    Vaccination does not prevent infection or transmission of Covid-19, and the CDC no longer differentiates between vaccinated and unvaccinated individuals.[4]

106.    While many, including the President, claimed that the Covid-19 Pandemic was a pandemic of the unvaccinated, now the majority of people with Covid-19 were vaccinated to one extent or another.

107.    A recent study indicates that people who took the Covid-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

108.    The number of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

109.    Similarly, the number of people who were counted as having died from Covid-19 were overstated because many of them died *with* Covid-19, not *from* Covid-19.

110.    The number of Covid-19 deaths were also overstated by upwards of 25%, or even more, because many of those who died had multiple co-morbidities.

111.    Dr. Deborah Birx stated "[b]ut let's be very clear: 50% of the people who died from the Omicron surge were older, vaccinated."

112.    The VAERS system has documented that the vaccines themselves, have numerous harmful side effects associated with them.  Some of these harmful side effects are included in the lists of side effects described right in the vaccine literature for each of the available vaccines.

---

[4] https://www.cdc.gov/media/releases/2022/p0811-covid-guidance.html. (last accessed November 8, 2022).

26

113.    Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendants have done as set forth above.

114.    Early on in the Covid-19 pandemic, and before any vaccines were available, Defendant Mayo provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2.*" Defendant Mayo has subsequently stopped providing this testing because of the demonstrated superiority of natural immunity to vaccinated immunity, might encourage its employees to decline the vaccine.

115.    Rather than disclosing the results of its determination on the numbers of Defendants' "*staff*" that "*have developed antibodies against SARS-Co-V-2,*" or disclosing studies on the "*duration of immunity after Covid-19,*" (which some studies have asserted are many times more effective than vaccine immunity), Defendants have not made public this information and instead issued the Vaccine Mandate.

116.    Further, Defendants quit providing the antibody testing—whether free or paid—which deprived Defendants of important information as to whether the vaccine was necessary for its employees in the first instance, whether Defendants' employees needed accommodation, and whether Defendants would incur any hardship by continuing to employ unvaccinated employees.

27

117.   The State of Minnesota ceased to be under a state-declared "emergency" over three months before Defendants instituted their Vaccine Mandate, as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

118.   On March 8, 2022, Defendants announced they would suspend the testing program portion of the Vaccine Mandate.  As a result, Defendants' remaining unvaccinated employees are now treated similarly to vaccinated employees, but Plaintiffs were treated discriminatorily.

119.   After terminating the Plaintiffs, and discriminating against employees related to testing, Defendants suspended weekly testing effective March 14, 2022, which means that those who refused weekly testing and were terminated between January 2022 and March 14, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendants have now determined is unnecessary.

120.   After terminating the Plaintiffs, and in some cases before Defendants terminated the Plaintiffs, Defendant began hiring other, unvaccinated employees.  In some cases Defendants hired new, unvaccinated employees after Defendants had terminated unvaccinated employees; and in other cases Defendants hired unvaccinated employees before they had terminated other employees, who were terminated for refusing to become vaccinated.

121.   The following seriatim list of facts which have been gathered by the Plaintiffs group suing Defendants which casts doubt on the legitimacy of the exemption process are as follows:

28

- The exemption process, and particularly the appeal process were under an unnecessary short timeframe negatively affecting the quality of the exemption submissions.  There was no reason for the unnecessary shortness of the timeframe.  During that period, Delta and Omicron were the dominant variants in October 2021/January 2022, and the Defendants and the CDC were aware that the Covid-19 vaccine did not materially prevent infection, or transmission of those Covid-19 variants during that time period.

- The antibody testing to determine prior Covid-19 infection, and infection resistance that the CDC determined was many times superior to vaccinated immunity was terminated over the objection of the workforce, and demonstrated that the purpose of the Vaccine Mandate was not to further patient safety.  The refusal to acknowledge that Covid-19 recovered immunity was superior to vaccinated immunity demonstrated that the process was not created with patient safety being a primary concern.

- Defendant Mayo terminated a mother of two daughters who introduced her daughters to their religious faith, while granting the religious exemptions of her lower paid daughters.

- Defendant Mayo terminated numerous spouses who went to church with their fellow spouse while granting the religious exemption of the other spouse, and in one such instance, and on information and belief, their exemption requests contained *the exact same language*.

- Defendant Mayo terminated some parishioners at a parish while granting the religious exemptions of others who attended the exact same parish.

- Defendant Mayo's lack of an interactive process favored superior writers over inferior writers, something which has absolutely no bearing on the sincerity of an exemption proponent's religious faith.

- Workers who were working remotely during their entire tenure, and who were absolutely no risk to their colleagues, or patients, were terminated, providing direct evidence that the entire exemption process was absurd and conducted in bad faith.

29

- Within two months of terminating Plaintiffs, Defendant Mayo was again hiring unvaccinated employees, demonstrating further that the purported reasons for the vaccine mandate were not patient safety and that the stated reasons for Plaintiffs' terminations were a pretext.

## FIRST CAUSE OF ACTION

### Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964

122. Plaintiffs restate and reallege all previous allegations as if fully set-forth herein.

123. Each Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

124. Each Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

125. Each Plaintiff has a sincerely held religious belief which prevented them from receiving the vaccine. Plaintiffs' beliefs arise because of their religious beliefs.

126. Plaintiffs informed their Defendant employers of the conflict between their religious beliefs and receiving the Covid-19 vaccine.

127. Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. Id. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. Id. § 2000e(j).

128. Title VII prohibits Defendants from scrutinizing what Defendants believe to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendants believe they should be.

30

129.    Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

130.    Plaintiffs, in their requests for accommodation from Defendants' Vaccine Mandate, made individualized requests for accommodation, but instead were terminated.

131.    In response to the Plaintiffs' requests for reasonable accommodation of their sincerely-held religious beliefs, Defendants and their ad hoc panel applied a uniform, blanket rule in rejecting nearly all, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation.

132.    Despite the Plaintiffs' consistent requests for Defendants to engage in an interactive process regarding the requests for accommodation, Defendants refused throughout to engage in the interactive process and instead rejected Plaintiffs' requests for an exemption for identical reasons as other Defendants' employees using an identical form letter.

133.    As set forth above, Defendants could have accommodated Plaintiffs' requests for religious exemptions without suffering any undue hardship by having them continue to do their jobs the same as they had done for the last one and one-half years of their employment.

134.    Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

31

135.   Because of Defendants' unlawful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

**Discrimination and Failure to Accommodate under the ADA, 42 U.S.C. § 12101 et seq.**

136.   Plaintiffs restate and reallege all previous allegations as if fully set-forth herein.

137.   Each Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

138.   Each Plaintiff is an "employee" within the meaning of 42 U.S.C. § 12111(4).

139.   The ADA, at 42 U.S.C. § 12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

140.   Defendants' Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a), by requiring their employees to vaccinate or undergo weekly testing.  Defendant Mayo's Vaccine Mandate policy requirement was neither job related nor consistent with business necessity. Since the Covid-19 vaccine did not prevent infection or transmission of Covid-19 by the vaccinated, particularly the dominant Delta and Omicron variants at the time of Plaintiff's termination, the discrimination between the vaccinated and the unvaccinated violated the ADA.

32

141.   As a result of Defendants' wrongful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## THIRD CAUSE OF ACTION
### Breach of Contract/Promissory Estoppel

142.   Plaintiffs restate and reallege all previous allegations as if fully set-forth herein.

143.   Defendants had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

144.   Defendants wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, religion, gender, age, national origin, marital status, sexual orientation, veteran's status, disability, or status with regard to public assistance." (emphasis added).

145.    Defendants' policies and statements created a contract between them and their employees.

146.   Defendants' actions in terminating Plaintiffs, discriminating against them on the basis of their religious beliefs, constitutes a breach of that contract.

147.   Plaintiffs have been damaged by Defendants' breaches of contract.

148.   In the alternative, Defendants' promises to their employees, both written and verbal, created an expectation on which the employees, including Plaintiffs, relied to

33

their detriment. Defendants' promises to their employees, including Plaintiffs, should be enforced to avoid injustice.

## FOURTH CAUSE OF ACTION

### State law religious discrimination claim under Arizona Revised Statutes §41-1463 (Plaintiffs Mauck, Goldsberry, Brimhall, Murphy, and Schmaltz)

149.    Plaintiffs restate and reallege all previous allegations as if fully set-forth herein.

150.    Ariz. Rev. Stat. §41-1463, et seq. prohibits discrimination in employment based on religion.

151.    Defendant Mayo Arizona is an "employer" within the meaning of Ariz. Rev. Stat. §41-1463.

152.    Plaintiffs Mauck, Goldsberry, Brimhall, Murphy and Schmaltz (the "Arizona Plaintiffs") are each an "employee" within the meaning of Ariz. Rev. Stat. §41-1463.

153.    The Arizona Plaintiffs each have a sincerely held religious belief which prevented the Arizona Plaintiffs from receiving the Covid-19 vaccine.

154.    The Arizona Plaintiffs informed Defendants of the conflict between the Arizona Plaintiffs' religious beliefs and the Vaccine Mandate.

155.    Ariz. Rev. Stat. §41-1463 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

34

156.    Ariz. Rev. Stat. §41-1463 et seq. prohibits Defendants from scrutinizing what it believes to be the sincerity of the Arizona Plaintiffs' religious beliefs, or whether the Arizona Plaintiffs' exercise of their religious beliefs is logical or as consistent as Defendants believed the exercise of those religious beliefs should be.

157.    In response to the Arizona Plaintiffs' requests for reasonable accommodation of their sincerely-held religious beliefs, Defendants' ad hoc panels applied a uniform, blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

158.    Despite the Arizona Plaintiffs' requests for Defendants to engage in dialogue regarding the Arizona Plaintiffs' request for a religious exemption, Defendants refused throughout to engage in the interactive process, and instead the Defendants terminated the Arizona Plaintiffs for generalized reasons using identical form letters as used for other of Defendants' employees.

159.    Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Ariz. Rev. Stat. §41-1463 et seq.

160.    Because of Defendants' unlawful actions, the Arizona Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs above-named prays for judgment in their favor and against Defendants and for an Order of the Court as follows:

1. Adjudging that Defendants are liable to Plaintiffs for their actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2. Enjoining Defendants from taking further illegal action against Plaintiffs in violation of both state and federal law, and Ordering Defendants to take action to restore Plaintiffs to their positions they would have enjoyed absent Defendants' illegal conduct;

3. Awarding Plaintiffs their costs, attorney fees, prejudgment interest, and any other relief permitted by statute; and

4. Awarding such other relief as the Court may deem just and equitable, including, without limitation, an injunction prohibiting differences in treatment between the vaccinated and unvaccinated which do not have a scientific basis.

Dated: December 5, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiffs*